**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
**FRANCISCO SOTO,** on behalf of himself and all others similarly situated,

Plaintiff,

**-v.-**

**INDIGO WILD, LLC,**

Defendant.
---------------------------------------------------------------x

Case No. __________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **FRANCISCO SOTO** ("Plaintiff" or "Mr. Soto"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this action against **INDIGO WILD, LLC,** ("**INDIGO WILD**" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.indigowild.com, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Francisco Soto is a resident of New York County and is permanently disabled due to advanced Wet Age-Related Macular Degeneration ("Wet AMD"), a degenerative retinal disease that has caused severe and irreversible central vision loss. His treating retina specialist at NYU Langone Eye Center confirms that Mr. Soto retains only "bare perception of objects at best," with profound impairment in central acuity, contrast sensitivity, and fine-detail recognition. His condition "meets the clinical criteria for legal blindness," and the vision loss he has sustained is permanent. Exhibit A

2. As a legally blind individual, Mr. Soto relies exclusively on screen-reading software and keyboard navigation to access digital content independently. Because he cannot visually interpret website content, he depends on websites to provide proper semantic structure, meaningful

alternative text, labeled interactive elements, and screen-reader-compatible navigation. Mr. Soto uses both NVDA (NonVisual Desktop Access) and JAWS (Job Access With Speech)—two of the primary screen-reading programs used by blind individuals—which convert on-screen content into synthesized speech or Braille output. For Mr. Soto, accessible coding is not optional; it is the only means by which he can perceive, navigate, and interact with websites.

3. In 2026, Mr. Soto sought to independently browse and purchase premium plant-based body care products from Indigo Wild, LLC ("Indigo Wild" or "Defendant"), including but not limited to Defendant's Zum Bar Goat's Milk Soap, Zum Body Soap, and Zum Mist Aromatherapy Spray. Because Mr. Soto cannot drive, cannot visually inspect product labels in a retail store, and cannot independently compare ingredients, scents, or product variations on physical shelves, accessible online shopping is the only reliable means by which he can evaluate and obtain safe, high-quality personal-care products for his daily use.

4. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech

or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8. Plaintiff brings this civil action against Indigo Wild, LLC, the operator of www.indigowild.com (the "Website"), for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA

9. On three separate occasions—February 12, 2026, March 9, 2026, and April 14, 2026—Plaintiff attempted to access Defendant's Website using NVDA, the screen-reader program to research and purchase Zum Bar Goat's Milk Soap, Zum Body Soap, and Zum Mist Aromatherapy Spray. Plaintiff attempted to review, including but not limited to, product descriptions, scent variations, ingredient panels, pricing, availability, and shipping information before completing a purchase.

10. Despite multiple attempts across these three dates, Plaintiff was unable to

independently complete his objectives due to pervasive access barriers. Automated SortSite audits of Defendant's Website revealed systemic WCAG 2.1 Level A and AA violations across hundreds of pages, including but not limited to: missing alternative text; placeholder alt attributes such as "image"; animated images longer than five seconds without pause controls; clickable controls lacking ARIA roles; input elements missing required attributes; HTML form controls without accessible names; empty headings; improper list structure; nested interactive elements; invalid ARIA roles; broken focus outlines; and broken links across 472 pages.

11. These accessibility barriers were not isolated to individual product pages but were systemic and site-wide. SortSite identified 28 Level A issues across 466 pages, 196 pages containing placeholder alt text, 189 pages with invalid ARIA ownership structures, 67 pages with non-pausable animations, and 208 pages with CSS animations exceeding five seconds without user controls. These findings confirm that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered. Exhibit B

12. Defendant operates a retail ecommerce platform through which consumers can browse plant-based body care products, review product-specific information (including scent profiles, ingredients, and product variations), and purchase items directly online for nationwide delivery. Plaintiff specifically sought out Defendant because of its advertised selection of premium body care products, including the Zum Bar Goat's Milk Soap, Zum Body Soap, and Zum Mist Aromatherapy Spray, which Plaintiff was unable to evaluate independently at a physical retail location because of his severe visual impairment.

13. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.indigowild.com becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

**JURISDICTION & VENUE**

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

16. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

17. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in New York County, accessed Defendant's Website, www.indigowild.com, from within this District, and personally experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. *See Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.); *see also Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

18. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, www.indigowild.com, which allows users to browse inventory, review product information, select items, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit consistently hold that operators of nationwide ecommerce platforms are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. *See Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

19. The United States Department of Justice has repeatedly confirmed that the ADA

applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

20. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

21. Plaintiff **Francisco Soto** is, and at all relevant times was, a resident of New York County, New York. Mr. Soto is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by his treating retina specialist at NYU Langone Eye Center, Mr. Soto suffers from advanced Wet Age-Related Macular Degeneration, a permanent degenerative retinal condition that causes severe central vision loss, profound impairment in contrast sensitivity, and drastically reduced visual acuity. His condition meets the clinical criteria for legal blindness and requires the use of screen-reading software to access digital content independently.

22. Plaintiff is a proficient user of screen-reader technology, including **NVDA**, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Soto depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

23. For Mr. Soto, accessible online shopping is essential to his independence. As a legally blind consumer, he cannot visually browse retail stores or product displays without assistance. He therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase products suitable for his daily needs. This includes **premium body-care products, soaps,**

**lotions, and home-care items** sold by Indigo Wild, which he requires both for personal use and for maintaining a safe, clean environment for his **highly trained 4-year-old male Rhodesian Ridgeback service dog, Jake**, who provides orientation assistance, mobility support, and emotional stability. When websites lack proper alternative text, labeled controls, or navigable structure, Mr. Soto is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

24. Upon information and belief, **Indigo Wild, LLC** is a Missouri limited liability company with its principal place of business located in Kansas City, Missouri. Defendant owns, operates, and controls the commercial retail ecommerce Website *www.indigowild.com* (the "Website"), through which it markets, displays, and sells body-care products, soaps, lotions, aromatherapy items, and related goods to consumers throughout the United States, including residents of New York. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

25. This is not the first time Defendant has been placed on notice of its unlawful digital inaccessibility. In **2019**, Defendant was sued for operating an inaccessible website and, upon information and belief, agreed to remediate its Website within two years. Despite that commitment, and despite the passage of four years**,** Defendant has failed to implement meaningful accessibility improvements. The three SortSite reports attached hereto confirm that Indigo Wild's Website remains riddled with Level A and Level AA accessibility violations, broken links, missing alternative text, improper ARIA roles, keyboard traps, and structural coding failures—demonstrating that Defendant has not only failed to remediate, but has allowed accessibility barriers to persist and proliferate.

## STATEMENT OF FACTS

### A. Plaintiff's Disability and Assistive Technology

26. Plaintiff Francisco Soto is a legally blind resident of New York County who suffers from advanced Wet Age-Related Macular Degeneration ("Wet AMD"), a degenerative retinal disease that has caused severe and irreversible central vision loss. His treating retina specialist at NYU Langone Eye Center confirms that Mr. Soto retains only "bare perception of objects at best," with profound impairment in central acuity, contrast sensitivity, and fine-detail recognition. His condition meets the clinical criteria for legal blindness.

27. Because of this profound visual impairment, Mr. Soto relies exclusively on screen-reading software and keyboard navigation to access digital content independently. He uses **NVDA (NonVisual Desktop Access)** and **JAWS (Job Access With Speech)**, two of the primary screen-reading programs used by blind individuals, which convert on-screen content into synthesized speech or Braille output. For Mr. Soto, accessible coding is not optional; it is the only means by which he can perceive, navigate, and interact with websites.

### B. Plaintiff's Service Dog Jake and Scent Sensitivity

28. Mr. Soto lives independently with the assistance of **Jake**, his highly trained **four-year-old male Rhodesian Ridgeback service dog**, who provides orientation support, mobility assistance, and emotional stability. Because canines possess an extraordinarily acute sense of smell—estimated to be **up to 100 times more sensitive than that of humans**—Jake is highly reactive to harsh synthetic fragrances, volatile chemicals, and artificial additives commonly found in commercial soaps, detergents, and sprays.

29. To avoid triggering respiratory irritation, sensory overload, or discomfort that could interfere with Jake's service-animal duties, Mr. Soto must carefully select **gentle, plant-based, low-irritant products**, such as those marketed by Defendant. Accessible online shopping is

therefore essential to Mr. Soto's ability to independently evaluate product ingredients, scent profiles, and safety information before purchasing items for use around his service dog.

**C. Plaintiff's Attempts to Access Defendant's Website – Specific Products**

30. On **January 14, 2026**, **February 9, 2026**, and **April 3, 2026**, Mr. Soto attempted on three separate occasions to access Defendant's retail ecommerce Website, www.indigowild.com, using the NVDA screen reader on his home computer in New York County. He visited the Website for the specific purpose of browsing and purchasing premium, plant-based body-care and household products suitable for use in his home and around Jake.

31. During each visit, Mr. Soto attempted to research and purchase several of Defendant's products, including but not limited to:

- **Zum Bar Goat's Milk Soap – Frankincense & Myrrh**
- **Zum Clean Laundry Soap – Sea Salt**
- **Zum Mist Aromatherapy Spray – Lavender Mint**
- **Zum Body Lotion – Patchouli**

These products were of particular interest because they are marketed as natural, plant-based, and safe for use around pets, including service animals.

32. Plaintiff is particularly motivated to purchase Indigo Wild's products because he has long relied on gentle, plant-based personal care items that do not contain harsh detergents, artificial fragrances, or chemical additives. Due to his blindness, Plaintiff cannot safely browse retail stores, read ingredient labels, or compare product variations on physical shelves, making accessible online shopping the only way he can independently evaluate whether a product is suitable for his daily use. Indigo Wild's product line is uniquely appealing to him because it offers natural formulations, mild scent profiles, and non-irritating ingredients that align with his personal preferences and health

needs. These characteristics make the products especially desirable to Plaintiff, which is why he repeatedly attempted to access the Website and remains eager to return once it is made accessible.

33. Plaintiff also has specific personal grooming needs that make Indigo Wild's products especially important to him. Because of his visual impairment, he must rely on products that are predictable, gentle on the skin, and free from overpowering or synthetic fragrances that could cause irritation or discomfort. Plaintiff prefers mild, naturally scented soaps and body care items that do not leave strong chemical residues, and he has found that plant-based formulations are the only products that consistently meet these requirements. Indigo Wild's offerings align closely with these preferences, making them a central part of the grooming routine he is trying to maintain independently.

34. Plaintiff was particularly drawn to several of the scent profiles featured on Defendant's scent-guide page, including the lavender-based blends, the citrus-mint combinations, and the milder botanical scents described as calming, fresh, or balanced. These scent families are especially appealing to him because they are naturally derived, not overpowering, and less likely to cause irritation for either himself or his service dog. For example, the lavender and rosemary blend, the citrus-mint combinations, and the frankincense-and-myrrh profiles described on the Website all fall within the types of scents Plaintiff prefers for daily use. The Website's descriptions of these scents reinforced his desire to purchase them, but the accessibility barriers prevented him from navigating to the corresponding product pages, selecting variations, or completing a purchase.

**D. Product-Specific Accessibility Barriers Systemic Barriers Confirmed by SORT SITE**

35. Despite multiple attempts, Mr. Soto was unable to independently evaluate or purchase any of these products due to pervasive accessibility barriers on Defendant's Website. These barriers prevented NVDA and JAWS from conveying critical product information such as scent,

ingredients, size, availability, and price.

36. The **SortSite accessibility audit** of www.indigowild.com — covering more than 2,500 pages—identified hundreds of WCAG 2.1 Level A and AA violations, including:

**Missing alternative text** on product images, including the Frankincense & Myrrh Zum Bar and Sea Salt Laundry Soap pages, causing NVDA to announce only "image" with no meaningful description.

**Empty links and unlabeled buttons**, preventing Mr. Soto from selecting scent options, pack sizes, or "Add to Cart" controls.

**Broken ARIA references** and **invalid ARIA roles**, causing NVDA to skip or misread product information.

**Keyboard-inoperable controls**, including product filters and quantity selectors.

**Animated GIFs and CSS animations** exceeding five seconds without pause controls, disrupting screen-reader focus.

**Broken links**, including repeated 400-error social media links that caused NVDA to stall.

37. These barriers manifested in concrete, product-specific harms. For example:

- On the **Frankincense & Myrrh Zum Bar** page, SortSite identified placeholder alt text (e.g., "alt='image'"), preventing Mr. Soto from identifying the scent or product type.
- On the **Sea Salt Zum Clean Laundry Soap** page, missing labels and invalid ARIA roles prevented him from determining whether the product was in stock or what size options were available.
- On the **Lavender Mint Zum Mist** page, animated images and missing alt text prevented him from identifying the scent profile or selecting a quantity.

38. The SortSite audit confirmed that these were not isolated issues. Across the Website:

- **19%** of pages contained Level A accessibility violations
- **19%** contained broken links

- **18%** contained W3C standards violations

These findings demonstrate that Defendant's Website is **systemically incompatible** with screen-reader technology.

**E Concrete Injury, Deterrence, and Intent to Return**

38. As a result of Defendant's inaccessible Website, Mr. Soto was unable to independently evaluate or purchase the products he sought, was denied full and equal access to Defendant's goods and services, and experienced frustration, humiliation, and loss of dignity.

39. Mr. Soto remains highly interested in purchasing Indigo Wild's plant-based products and intends to return to the Website as soon as it is made accessible. His intent to return is credible because:

- He continues to require gentle, plant-based products suitable for use around Jake.
- Indigo Wild offers unique products he cannot evaluate elsewhere.
- He has no alternative means of independently reviewing ingredient panels or scent profiles without an accessible Website.
- He has demonstrated a history of attempting to access the Website for the purpose of purchasing specific products.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.indigowild.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

41. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access

www.indigowild.com and were denied equal access to the goods, services, and information offered thereon.

42. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its sous-vide, human-grade dog food products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by WAVE and SortSite audits.

43. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

44. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the WAVE and SortSite reports.

45. Plaintiff will fairly and adequately represent and protect the interests of the Class and

Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

46. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

47. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

48. Plaintiff Francisco Soto, on behalf of himself and the Class Members, repeats and **realleges** every allegation of the preceding paragraphs as if fully set forth herein.

49. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. §12182(a)..

50. Defendant's Website, www.indigowild.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

51. Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

52. Defendant's Website, www.indigowild.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

53. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

54. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.
> **42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).**

55. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA,

has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.indigowild.com, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

56. Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility failures through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

57. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

58. Plaintiff, **Francisco Soto,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

59. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

60. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

61. Defendants, at all relevant times to this action, own and operate a place of public

accommodation, the subject Website, www.indigowild.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

62. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

63. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

64. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

65. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a Website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the site known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y.

Exec. Law § 296(2)(c).

66. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

67. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

68. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

69. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

70. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

71. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

72. An actual controversy has arisen and now exists between the parties in that Plaintiff

contends, and is informed and believes Defendant denies, that Defendant's Website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered throughout the Website.

73. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

## THIRD CAUSE OF ACTION
### (Violation of New York State Civil Rights Law) ("NYCRL")

74. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

75. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

76. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

77. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

78. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the

N.Y. Civil Rights Law.

79. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.indigowild.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

80. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

81. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

82. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id..*.

83. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

84. Plaintiff, **Francisco Soto,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

85. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public

accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

86. Defendant is subject to NYCHRL because it owns and operates the Website, www.indigowild.com , making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

87. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, rendering the goods and services offered thereon inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

88. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

89. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is insufficiently intuitive and/or obvious such that it is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

90. Defendant has failed to take any prompt and equitable steps to remedy the

discriminatory conduct as these violations are ongoing.

91. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

92. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

93. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

94. Plaintiff is also entitled to reasonable attorneys' fees and costs.

95. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

96. Plaintiff, Francisco Soto, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

97. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that their Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of

the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

98. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.indigowild.com, ully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 4, 2026

Respectfully submitted,
JOSEPH & NORINSBERG LLC
By: */s/ Robert L. Schonfeld*
Robert Schonfeld, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com
Attorneys for Plaintiff